Eric A. GOEHL, on behalf of himself and all others similarly situated

v.

MELLON BANK (DE)

I. Orrin SPELLMAN, on behalf of himself and all others similarly situated

v.

MERIDIAN BANK (DE), and its successor in interest Mellon Bank (DE).

Civ. A. Nos. 92–2547, 92–3860.

United States District Court, E.D. Pennsylvania.

April 21, 1993.

Nicholas E. Chimicles, Michael D. Donovan, Greenfield & Chimicles, Haverford, PA, for plaintiff.

Jeffrey S. Saltz, Alan S. Kaplinsky, Burt M. Rublin, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, Lucile H. Lynch, Reed, Smith, Shaw & McClay, Philadelphia, PA, for defendant.

Lucile H. Lynch, Philadelphia, PA, Thomas L. Allen, Daniel I. Booker, Troy Rivetti, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for movant.

### MEMORANDUM

JAMES McGIRR KELLY, District Judge.

Presently before the court are Plaintiffs' Motions to Remand to the Court of Common Pleas of Philadelphia County. Plaintiffs in these two related actions are credit card customers of the Defendant banks.[1] Defen-

1. Although the two actions are technically separate, the Plaintiffs are represented by the same counsel, have asserted the same claims, and have submitted the same set of papers in each action.

While Defendants Mellon and Meridian are represented by different counsel, they likewise have raised the same defenses and have submitted the same set of papers. Therefore, the Plaintiffs and

dants are national banks located in the state of Delaware. Plaintiffs, all residents of Pennsylvania, brought suit in the Court of Common Pleas of Philadelphia County, challenging Defendants' practice of charging late fees in addition to periodic interest charges. The fees charged by the Defendant banks are permitted by the laws of the state of Delaware.

In their Complaints, Plaintiffs allege that Defendants assessed late fees in violation of the Pennsylvania Goods and Services Installment Sales Act, 69 Pa.Stat.Ann. § 1101 *et seq.;* the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat. Ann. § 201–1 *et seq.;* and that the late fees constituted unjust enrichment in violation of Pennsylvania common law. Plaintiffs seek recovery of all late charges collected by the Defendants, treble damages (or a minimum of $100), and injunctive relief which would restrain Defendants from continuing their practice of charging and collecting late charges and from communicating adverse information relating to late charges to credit bureaus or credit reporting agencies.

Defendants removed the actions to federal court on the grounds that removal is appropriate because this court had federal question jurisdiction based on the National Bank Act and diversity jurisdiction. Plaintiffs now move to remand the actions to state court on the grounds that their Complaints present no federal question and do not meet the amount in controversy requirement of diversity jurisdiction.[2]

Section 1441 of Title 28 of the United States Code provides for the removal of civil actions from state to federal court. Section 1441(a) provides in part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States

for the district and division embracing the place where such action is pending.

28 U.S.C.A. § 1441(a) (West 1973 & Supp. 1992). Thus, "[o]nly state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). As stated above this court will only determine whether it has original jurisdiction based on a federal question.

Under 28 U.S.C. § 1331, the district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." In order for a case to be removable based on federal question jurisdiction, the well-pleaded complaint rule requires that the federal question be presented on the face of plaintiff's "properly pleaded complaint." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 939 (3d Cir.1988) (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Additionally, under the well-pleaded complaint rule, a case is not removable to federal court based on a federal defense, " 'including the defense of pre-emption, even if the defense is anticipated in the complaint, and even if both parties concede that the federal defense is the only question truly at issue.' " *Id.* (quoting *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430); *see United Jersey Banks v. Parell,* 783 F.2d 360, 367 (3d Cir.) (plaintiff's claims did not "arise under" federal law where state claims could be defeated because of preemptive effect of federal banking laws), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986).

There is, however, an exception or "independent corollary" to the well-pleaded complaint rule known as the "complete preemption doctrine." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. The complete preemption doctrine provides that "Congress may so

---

Defendants in the two cases will be referred to collectively in this Memorandum.

**2.** Defendants apparently have abandoned their arguments that this court has subject matter jurisdiction based on diversity of citizenship inasmuch as their Memoranda of Law in Opposition

to Plaintiffs' Motions to Remand fail to argue in support of this basis of jurisdiction. Thus, this court will only consider whether it has federal question jurisdiction. Indeed, as a result of the resolution of this issue, this court need not consider whether diversity jurisdiction exists.

completely preempt a particular area [of law], that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In these cases, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983) ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law")).

The United States Court of Appeals for the Third Circuit has established two requirements to determine whether a federal statute completely preempts state law in an area. First, "the statute relied upon by the defendant as preemptive [must] contain[ ] civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Railway Labor*, 858 F.2d at 942 (citing *Franchise Tax*, 463 U.S. at 24, 26, 103 S.Ct. at 2854, 2855). The federal statute must subsume the interest vindicated by the state law, not the remedy provided. *Id.* 858 F.2d at 942 n. 2. Secondly, there must be "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* at 942 (citing *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1547). Both criteria must be satisfied to establish complete preemption.

■ Plaintiffs' Complaints contain only state law causes of action. Defendants argue that the National Bank Act (the "NBA"), 12 U.S.C. §§ 85 and 86, completely preempts the state law claims Plaintiffs assert. This court must first determine whether Plaintiffs' state claims fall within the civil enforcement provisions of the National Bank Act.

Section 85 of the National Bank Act provides in part:

Any association may take, receive, reserve, and charge on any loan ... interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more ...

12 U.S.C. § 85. Section 86 of the National Bank Act provides in part:

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid ... may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid ...

12 U.S.C. § 86. Sections 85 and 86 do not define the terms "interest" and "rate of interest."

Defendants argue that Plaintiffs rely on state laws that are designed to protect consumers from excessive charges in connection with the extension and repayment of credit. Defendants claim that section 85 of the NBA was designed to vindicate this same interest and that it exclusively governs the interest charges of national banks. Finally, Defendants argue that section 86 of the NBA provides the exclusive federal remedy for violations of section 85.

Plaintiffs claim that late fees are not governed by sections 85 and 86 of the NBA. Plaintiffs argue that sections 85 and 86 govern the amount of interest national banks may charge and that because late fees are not interest, they are not governed by sections 85 and 86.

This court is aware of at least two courts that have addressed the issue of whether the NBA completely preempts state law based on facts strikingly similar to the cases at bar.[3] In *Nelson v. Citibank (South Dakota)*

---

3. *See also Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818, 826, 829–30 (1st Cir.1992) (late

*N.A.*, 794 F.Supp. 312 (D.Minn.1992), credit card customers brought an action in Minnesota state court against national banks challenging their practice of charging late fees and over limit fees on credit card accounts. The defendant banks removed the action to federal court based on sections 85 and 86 of the NBA and the plaintiffs moved to remand the action to state court. The United States District Court for the District of Minnesota held that the NBA completely preempted plaintiffs' state law actions and removal to federal court was proper. The court, relying largely on *Fisher v. First National Bank*, 548 F.2d 255 (8th Cir.1977), rejected plaintiffs' arguments that the definition of interest under section 85 was limited to periodic interest charges. The court determined that interest under section 85 could not be defined narrowly to include only periodic interest charges, but included flat fees as well.[4]

In *Ament v. PNC National Bank*, 825 F.Supp. 1243 (W.D.Pa.1992), plaintiff, a credit card holder of defendant national bank, brought an action in state court claiming that annual fees, late payment charges, returned check charges, and over limit charges that defendant assessed were illegal under Pennsylvania law. Plaintiff asserted purely state law causes of action. Defendant removed the action to federal court claiming federal question jurisdiction because the NBA completely preempted plaintiff's state law claims. Plaintiff moved to remand the case to state court. The United States District Court for the Western District of Pennsylvania held that removal was proper because plaintiff's state claims were completely preempted by the NBA and thus, federal question jurisdiction existed.

The court determined that it would be improper in the context of a motion to remand to decide whether "interest" as defined in sections 85 and 86 of the NBA included the fees that were the basis of plaintiff's complaint because this would improperly address the merits of the case. *Id.* at 1249. The court nonetheless reasoned that complete preemption applied because under the test established by the Third Circuit, section 86 of the NBA vindicated the same interests for which plaintiff sought vindication by their state law claims. *Id.* at 1249–50. The court determined that the late fees and other charges were related to credit extended by defendant, and plaintiffs' suit was merely an action by borrowers against a national bank to recover allegedly improper loan related charges. *Id.* at 1249. Thus, the court found that plaintiff's action was aimed at safeguarding the same interest as would an action for excessive interest under section 86 of the NBA. Additionally, the court, relying on *M. Nahas & Co. v. First National Bank*, 930 F.2d 608 (8th Cir.1991), determined that the Third Circuit's second requirement for complete preemption was met because the NBA "constituted 'an exclusive federal remedy, created by Congress over 100 years ago to prevent the application of overly punitive state law usury penalties against national banks.'" *Id.* at 1250 (quoting *M. Nahas & Co.*, 930 F.2d at 612).

This court finds the above authority, which was based on facts almost identical to the cases at bar, to be persuasive on the issue of whether complete preemption applies in these cases. Given the expansive definition traditionally accorded the term "interest" un-

charges are "interest" for purposes of section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 which is modeled on section 85 of the NBA), *cert. denied*, —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993).

4. The court cited numerous cases to demonstrate that courts "have uniformly taken an expansive view of 'interest,' applying sections 85 and 86 to numerous charges other than periodic interest rates." *Nelson*, 794 F.Supp. at 318 (citing *McAdoo v. Union Nat'l Bank*, 535 F.2d 1050, 1056 (8th Cir.1976) (compensating balance requirements); *Cronkleton v. Hall*, 66 F.2d 384, 387 (8th

Cir.), *cert. denied*, 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed. 590 (1933) (bonus or commission paid to lender); *Northway Lanes v. Hackley Union Nat'l Bank & Trust Co.*, 464 F.2d 855, 863 (6th Cir. 1972) (closing costs); *Schumacher v. Lawrence*, 108 F.2d 576, 577 (6th Cir.1940) (taxes and recording fees); *Panos v. Smith*, 116 F.2d 445 (6th Cir.1940) (same); *American Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781 (9th Cir.1982) (compensating balance requirements); *Kenty v. Bank One, Columbus, N.A.*, 1992 WL 170605 (S.D.Ohio 1992) (excessive and unauthorized insurance premiums)).

der the NBA,[5] and that Plaintiffs' Complaints seek recovery for charges related to the extension of credit by national banks, this court finds that sections 85 and 86 of the NBA subsume the interests for which Plaintiffs seek vindication under state law. Additionally, this court finds that there is a clear indication of Congressional intent to permit removal in cases implicating sections 85 and 86 of the NBA. Accordingly removal was proper in this case based on federal question jurisdiction.

Plaintiffs' Motions to remand this action to the state court will be denied.