Katherine W. WATSON, individually, and for the benefit of and on behalf of the class of all others similarly situated, Plaintiff,

v.

FIRST UNION NATIONAL BANK OF SOUTH CAROLINA and First Union National Bank of Georgia, Defendants.

Civ. A. No. 3:93–2024–17.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 3, 1993.

Michael R. Daniel, Daniel & Daniel, Columbia, SC, for plaintiff.

Robert M. Erwin, Jr., Nelson, Mullins, Riley & Scarborough, Myrtle Beach, SC, Thomas E. Lydon, Nelson, Mullins, Riley & Scarborough, Charleston, SC, Barbara E. Brunson, Nelson, Mullins, Riley & Scarborough, Columbia, SC, for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is currently before the court on the plaintiff's motion to remand. The plaintiff asserts that the case was improperly removed because, she contends, the court lacks subject matter jurisdiction. The court heard oral argument on this motion on September 29, 1993 and requested counsel for both parties to provide supplemental memoranda on the issue. For the reasons set forth in this order, the plaintiff's motion to remand is denied.

On July 9, 1993, the plaintiff, Katherine W. Watson, filed this action in the Court of Common Pleas for Lexington County both individually and as a class action on behalf of others similarly situated. The complaint alleges that the defendants violated section 37–3–202 of the South Carolina Consumer Protection Code by charging, on credit card accounts, overlimit fees in excess of those allowed by the statute. In addition, the plaintiff alleges that the defendants had charged overlimit fees before such fees were authorized by the South Carolina General Assembly.

The defendants removed the case to this court on August 11, 1993. The defendants characterize the plaintiff's claim for excessive overlimit fees as a claim for usurious interest. Because the defendants are national banks, the amount of interest they can charge is dictated by the National Bank Act.[1] The defendants assert that the National Bank Act completely preempts the plaintiff's state-law claims such that the plaintiff's action is necessarily federal. Accordingly, the defendants argue that this court has federal question jurisdiction and that removal was therefore proper under 28 U.S.C. § 1441(a). The court agrees.

A defendant can remove to federal court a case that was brought in state court if the case could have originally been brought in federal court. 28 U.S.C. § 1441(a). The

---

1. Section 85 of the National Bank Act, which limits the amount of interest that a national bank may charge, provides in relevant part:

    Any association may take, receive, reserve, and charge on any loan ... or other evidence of debt, interest at the rate allowed by the laws of the State ... where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more....

12 U.S.C. § 85.

    Section 86, which is the exclusive federal remedy for usurious interest, *M. Nahas & Co. v. First National Bank*, 930 F.2d 608, 610–11 (8th Cir. 1991), provides in relevant part:

    The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same....

12 U.S.C. § 86.

defendant has the burden of establishing that the underlying action was properly removed and that federal jurisdiction exists. *Cheshire v. Coca–Cola Bottling Affiliated,* 758 F.Supp. 1098, 1099 (D.S.C.1990) (citing 14A Charles A. Wright et al., Federal Practice and Procedure § 3721, at 209–10 (2d ed. 1985)). However, "courts must be cautious in denying defendants access to a federal forum since under 28 U.S.C. § 1447(d), remand orders are generally not reviewable." *Id.* at 1100 (citing 14A Wright et al., *supra,* § 3721, at 218–19). Nevertheless, the removal statutes are to be construed narrowly, and any doubt about federal jurisdiction should be resolved in favor of remanding the case to state court. *Id.* at 1102; *see* 14A Wright et al., *supra,* § 3721, at 216–17.

In the absence of diversity of citizenship between the parties, federal jurisdiction depends on whether the plaintiff's action presents a federal question—*i.e.,* whether the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists "only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citing *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Under the "well-pleaded complaint rule," the existence of federal jurisdiction must be determined from the face of the plaintiff's well-pleaded complaint, without consideration of any defenses that are raised or anticipated. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10–12, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983)). Generally, the plaintiff is the master of his lawsuit and can avoid federal jurisdiction by relying exclusively on state law in his complaint. *Id.* 482 U.S. at 392, 107 S.Ct. at 2429.

Federal preemption is usually raised as a defense to a plaintiff's cause of action. As such, this defense "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life,* 481 U.S. at 63, 107 S.Ct. at 1546. However, the Court has recognized an exception, or "corollary," to the well-pleaded complaint rule: "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64, 107 S.Ct. at 1546. If an area of law is completely preempted, then any state-law complaint based on that law arises under federal law for purposes of the well-pleaded complaint rule. *Caterpillar, Inc.* 482 U.S. at 393, 107 S.Ct. at 2430.

Presently, the United States Supreme Court has applied the complete preemption doctrine in only three areas. *See Metropolitan Life,* 481 U.S. 58, 107 S.Ct. 1542 (holding that state contract and tort claims are completely preempted by § 502(a)(1)(B) and (f) of ERISA); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (holding that state-law claim for possession of Indian tribal land is completely preempted by federal law); *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (holding that § 301 of the LMRA completely preempts a state cause of action for violation of contracts between an employer and a labor organization). In addition, the Fourth Circuit Court of Appeals has applied the complete preemption doctrine to federal copyright law, *Rosciszewski v. Arete Assocs.,* 1 F.3d 225 (4th Cir.1993), and to the Federal Railroad Safety Act, *Rayner v. Smirl,* 873 F.2d 60 (4th Cir.), *cert. denied,* 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989).

The propriety of removal in the instant case turns on whether sections 85 and 86 of the National Bank Act (NBA) completely preempt the plaintiff's state-law claims such that these claims are really federal in nature. Although this appears to be a novel issue in the Fourth Circuit, several federal courts in other circuits have squarely confronted it. The vast majority of the courts that have addressed this issue have concluded that the National Bank Act fits within the complete preemption doctrine and thus allows removal of an action even when the complaint is based solely on state law. *E.g., M. Nahas & Co. v. First National Bank,* 930

F.2d 608 (8th Cir.1991); *Goehl v. Mellon Bank,* 825 F.Supp. 1239 (E.D.Pa.1993); *Ament v. PNC National Bank,* 825 F.Supp. 1243 (W.D.Pa.1992); *Nelson v. Citibank (South Dakota) N.A.,* 794 F.Supp. 312 (D.Minn.1992); *see also Beeman v. MBank Houston, N.A.,* 691 F.Supp. 1027 (S.D.Tex. 1988) (holding that borrower's claim of usury against lender bank was governed by usury provisions of the National Bank Act, entitling bank to remove suit to federal court); *cf. Hill v. Chemical Bank,* 799 F.Supp. 948, 952 (D.Minn.1992) (holding that § 521 of the Depository Institutions Deregulation and Monetary Control Act, which is virtually identical to § 86 of the National Bank Act, "completely preempts the field of usury claims against federally insured state banks"). The court's research revealed only one case that has held to the contrary, *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537 (D.Colo.1993). This court is constrained to agree with the vast weight of the authority on this issue.

In *M. Nahas & Co. v. First National Bank,* 930 F.2d 608 (8th Cir.1991), the Eighth Circuit Court of Appeals stated that the complete preemption doctrine "is most appropriate where Congress has created an exclusive federal remedy that displaces any overlapping or inconsistent state remedies." *Id.* at 612. As the court observed, "[s]ection 86 [of the National Bank Act] is an exclusive federal remedy, created by Congress over 100 years ago to prevent the application of overly-punative state law usury penalties against national banks. It is now settled that suits under § 86 may be brought in federal court." *Id.* The court concluded, "whether or not plaintiff artfully attempted to couch its complaint wholly in state law terms, it was necessarily federal in nature and properly removable." *Id.*

In determining whether complete preemption exists for these provisions of the National Bank Act, the court in *M. Nahas* focused on Congress's intent to provide an exclusive federal remedy. *Id.* This approach is consistent with the Fourth Circuit's interpretation of the complete preemption doctrine. For example, in *Rayner v. Smirl,* 873 F.2d 60 (4th Cir.), *cert. denied,* 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989), in which the court applied the doctrine to the whistleblower provisions of the Federal Railroad Safety Act, the court stated: "If the FRSA provides [the plaintiff] an exclusive remedy, his state claim for wrongful discharge is preempted and removal was appropriate." *Id.* at 63. In addition, in *Rosciszewski v. Arete Assocs.,* 1 F.3d 225 (4th Cir.1993), the court stated: "[I]n deciding whether the preemptive force of the Copyright Act is so extraordinary that a state-law claim, preempted by § 301(a), becomes federal in nature, the focus of our inquiry must be congressional intent." *Id.* at 231 (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987)).

Admittedly, whether Congress intended the National Bank Act to completely preempt state-law in this area is problematic because the Act, passed in 1865, "predates the well-pleaded complaint rule, complete preemption, and, in fact, federal question jurisdiction." *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537, 540 (D.Colo.1993). Nevertheless, several courts have concluded that Congress intended to allow removal by creating "an exclusive federal remedy for usury claims against national banks." *Nelson v. Citibank (South Dakota), N.A.,* 794 F.Supp. 312, 316 (D.Minn.1992); *accord M. Nahas,* 930 F.2d at 612; *Goehl v. Mellon Bank,* 825 F.Supp. 1239, 1243 (E.D.Pa.1993) (finding "a clear indication of Congressional intent to permit removal in cases implicating sections 85 and 86 of the NBA"); *Ament v. PNC Nat'l Bank,* 825 F.Supp. 1243, 1250–51 (W.D.Pa.1992) (finding that "Congress did intend to permit removal"). *Contra Copeland,* 820 F.Supp. at 541. This court concurs with the majority view that the exclusive remedy provision of section 86 of the NBA evidences congressional intent that usury cases against national banks are necessarily federal.

In *M. Nahas* the plaintiff's action presented a direct conflict between state usury laws and the National Bank Act because the plaintiff alleged that the defendant had charged an excessive rate of interest on a loan. The holding of *M. Nahas* has been applied to several cases whose facts are strikingly simi-

lar to the case at bar. For example, in *Nelson v. Citibank (South Dakota), N.A.*, 794 F.Supp. 312 (D.Minn.1992), the plaintiffs brought actions against national banks, challenging the defendant banks' practice of charging late fees and overlimit charges, in addition to periodic interest, on credit card accounts. The defendants removed the plaintiffs' state-law actions pursuant to *M. Nahas's* conclusion that sections 85 and 86 of the National Bank Act completely preempt state-law usury claims. The defendants asserted that late fees and overlimit charges constitute interest for purposes of these provisions of the NBA. *Id.* at 316.

The *Nelson* court agreed with the defendants. Although the court recognized that the term "interest" as used in sections 85 and 86 is not defined in the statute, *id.* at 317, the court nevertheless accepted the defendant's position that "courts have uniformly taken an expansive view of 'interest,' applying sections 85 and 86 to numerous charges other than periodic interest rates." *Id.* at 318. The court concluded that flat fees such as late and overlimit fees are interest for purposes of section 85 and 86. *Id.* at 318–20 (citing *Fisher v. First Nat'l Bank,* 548 F.2d 255 (8th Cir.1977)); *see also Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818, 829–30 (1st Cir. 1992) (accepting the view that "the term 'interest' ... encompass[es] a variety of lender-imposed fees and financial requirements which are independent of a numerical percentage rate"), *cert. denied,* ––– U.S. –––, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993). Accordingly, the court concluded that the actions were properly removed. *Nelson,* 794 F.Supp. at 320; *accord Goehl v. Mellon Bank,* 825 F.Supp. 1239 (E.D.Pa.1993); *cf. Ament v. PNC Nat'l Bank,* 825 F.Supp. 1243 (W.D.Pa.1992) (upholding removal, but specifically refusing to reach the question of whether various fees were "interest" within sections 85 and 86). *But see Copeland v. MBNA America, N.A.,* 820 F.Supp. 537, 540–41 (D.Colo.1993) (concluding that removal was improper because the plain meaning of the term "interest" was not a "clear manifestation of congressional intent" to allow complete preemption in these cases).

 This court accepts the view that the credit card overlimit fees challenged in this case are "interest" for purposes of sections 85 and 86 of the National Bank Act. Accordingly, the plaintiff's state-law action falls within the ambit of sections 85 and 86 of the National Bank Act. Because these provisions of the NBA completely preempt state usury laws with regard to national banks, the plaintiff's action is truly federal in nature, and the case was properly removed.

For the foregoing reasons, the plaintiff's motion to remand is hereby denied.

IT IS SO ORDERED.