**James J. BLAIR and Jane A. Blair, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**SOURCE ONE MORTGAGE SERVICES CORPORATION and Republic Mortgage Insurance Company, Defendants.**

**Civ. No. 3–95–792.**

United States District Court,
D. Minnesota,
Third Division.

April 1, 1996.

---

Ronald S. Goldser, J. Gordon Rudd, Jr., Minneapolis, MN, for plaintiffs.

Margaret K. Savage, Minneapolis, MN, for Source One Mortgage Services Corp.

Catherine A. Gnatek, William L. Kirkman, Minneapolis, MN, for Republic Mortgage Ins. Co.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the Plaintiffs' Motion to Remand the matter to the Minnesota District Court for Dakota County, and upon the Defendants' Motions to Dismiss or, alternatively, for Summary Judgment.

A Hearing on the Motions was conducted on November 29, 1995, at which time the Plaintiffs appeared by Ronald S. Goldser and J. Gordon Rudd, Jr., Esqs.; the Defendant Source One Mortgage Services Corporation ("Source One") appeared by Margaret K. Savage, Esq.; and the Defendant Republic Mortgage Insurance Company ("Republic")

appeared by Catherine A. Gnatek and William L. Kirkman, Esqs.

For reasons which follow we grant the Motion to Remand and, accordingly, the Defendants' Motions are denied as jurisdictionally mooted.[1]

## II. *Factual and Procedural Background*

This putative class action was commenced, in the Minnesota District Court for Dakota County, on July 14, 1995, and seeks the recovery of certain premiums, that class members are purported to have wrongly paid for private mortgage insurance, together with a request for injunctive relief, and any attendant attorneys' fees. As originally framed, the Plaintiffs' Complaint alleged the following causes of action against one Defendant or the other: breach of contract; unjust enrichment; breach of duty of good faith and fair dealing; breach of fiduciary duty; fraud; violation of the Minnesota Consumer Fraud Act, Minnesota Statutes Section 325F.68 *et seq.*; conversion; violation of the Minnesota Deceptive Practices Act, Minnesota Statutes Section 325D.43 *et seq.*; and, negligence.

On or about August 18, 1995, the Defendants filed their joint Notice of Removal, pursuant to Title 28 U.S.C. § 1441, asserting as jurisdictional bases both Diversity of Citizenship, and Federal Question jurisdiction. See, *Title 28 U.S.C. § 1332 and 1331.* On August 29, 1995, the Plaintiffs filed their Amended Class Action Complaint[2] and, on September 21 and 22, respectively, Source One and Republic filed their alternative Motions for dismissal, or for Summary Judgment. As they relate to the Plaintiffs' Mo-

tion to Remand, the facts may be briefly summarized.

In accordance with the terms of the pertinent mortgage agreement, Source One required the Plaintiffs to maintain "mortgage insurance as a condition of making the loan secured" by the mortgage. See, *Exhibit B to Affidavit of John Cleary* at page 2. The purpose of the mortgage insurance was to protect Source One in the event that the Plaintiffs should default on their mortgage loan payments. Source One secured private mortgage insurance, to cover the Plaintiffs' mortgage, from Republic. The Plaintiffs contend that they are committed to pay for mortgage insurance only until such time as the ratio, between their loan and the value of the secured real estate, should be 80% or less. In contrast, Source One contends that the Plaintiffs are obligated to retain mortgage insurance "until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law." *Id.*

Among the allegations of the Plaintiffs' Complaint are assertions that the Plaintiffs have been injured as a result of Republic's payment of unauthorized and improper "commissions," "kickbacks" and "rebates" to Source One. On account of these purported wrongdoings, the Plaintiffs have alleged a series of State law violations, but they deny that the Defendants' conduct has violated any of the provisions of the Real Estate Settlement Procedures Act, Title 12 U.S.C. § 2601 *et seq.* ("RESPA").[3] Although deny-

---

**1.** Within this District, and within this Circuit, Motions to Remand a State Court proceeding, that has been improvidently removed, are recognized as nondispositive Motions which are within the referral jurisdiction of this Court, as provided by Title 28 U.S.C. § 636(b)(1)(A). See, *Banbury v. Omnitrition Intern, Inc.,* 818 F.Supp. 276, 279 (D.Minn.1993); *White v. State Farm Mutual Automobile Company,* 153 F.R.D. 639, 642 (D.Neb. 1993).

**2.** The Plaintiffs' Amended Complaint was expressly filed without prejudice to any subsequent decision to object to the Defendants' Notice of Removal. Our analysis of the Plaintiffs' Remand Motion, however, is solely governed by the allegations of their initial Complaint, which prompted the Defendants' Notice of Removal. See, *Nelson v. Citibank (South Dakota) N.A.,* 794 F.Supp.

312, 314 (D.Minn.1992), citing *Hatridge v. Aetna Casualty & Surety Co.,* 415 F.2d 809, 814 (8th Cir.1969).

**3.** More fully stated, the Plaintiffs have denied the applicability of RESPA, as follows:

Plaintiffs' Complaint and Amended Complaint assert that Source One and Republic have failed to disclose to Plaintiffs their ability to cancel private mortgage insurance ("PMI") once they attain a loan-to-value ("LTV") ratio of 80%. This failure to disclose material information constitutes a fraudulent scheme of omission whereby Plaintiffs and other borrowers have been or may be unlawfully charged premiums for this insurance. This is the gravamen of every count of Plaintiffs' Complaint. RESPA has no provision which addresses the

ing any wrongdoing, the Defendants contend that the Plaintiffs are seeking to vindicate their Federal rights, under RESPA, in the garb of their State law claims, and that, therefore, removal of this action from the State Courts was authorized by their invocation of the Court's Federal Question jurisdiction. Alternatively, the Defendants maintain that their resort to Federal jurisdiction can be pinioned upon Diversity of Citizenship grounds. In contrast, the Plaintiffs acknowledge that the citizenship of the opposing parties is diverse, but they deny that the Defendants can persuasively demonstrate that the amount in controversy exceeds the jurisdictional threshold of $50,000.00.

### III. *Discussion*

■ Since they are independently based, we separately address the Defendants' jurisdictional arguments, as they relate to Federal Question and Diversity jurisdiction but, in each instance, the Defendants bear the burden of establishing the existence of Federal jurisdiction. See, *Missouri ex rel. Pemiscot County v. Western Sur. Co.*, 51 F.3d 170, 173 (8th Cir.1995) ("[W]hen a federal complaint alleges a sufficient amount in controversy to establish jurisdiction, but the opposing party or the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence."), citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *In re Business Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir.1993).

#### A. *Federal Question Jurisdiction.*

■ 1. *Standard of Review.* "Removal of a state court action without regard to the citizenship of the parties is appropriate if the suit could have been brought in federal district court, as 'founded on a claim or right arising under the constitution, treaties or laws of the United States.'" *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 611 (8th Cir.1991), citing *Title 28 U.S.C. § 1441(b)*. Such Federal Question

jurisdiction is only presented when the pertinent Federal issue appears on the face of the Plaintiffs' Complaint. *Nelson v. Citibank (South Dakota) N.A.*, 794 F.Supp. 312, 314 (D.Minn.1992).

"Under the 'well-pleaded complaint' doctrine, the plaintiff is master of his claim and may avoid federal removal jurisdiction by exclusive reliance on state law." *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, supra at 611, citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Indeed, as the Court observed in *Caterpillar Inc. v. Williams*, supra at 393, 107 S.Ct. at 2430, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." [Emphasis in original]. Accordingly, "[a] district court's federal-question jurisdiction * * * extends over 'only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,' * * * in that 'federal law is a necessary element of one of the well-pleaded * * * claims.'" *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811 (1988), quoting *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1983).

■ "However, there is an exception to the well-pleaded complaint rule: 'a plaintiff cannot thwart the removal of a case by inadvertently, mistakenly or fraudulently concealing the federal question that would necessarily have appeared if the complaint had been well pleaded.'" *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, supra at 612. This is a narrow exception, and it is reserved for those Federal statutes that "so completely pre-empt a particular area, that any civil

---

egregious conduct of Source One and Republic; therefore, Plaintiffs assert only state law causes of action.

*Reply Memorandum in Support of Plaintiffs' Motion to Remand*, at page 4.

complaint raising this select group of claims is necessarily federal." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). In the final analysis, we resolve all doubts concerning the existence of a Federal Question in favor of remand. *In re Business Men's Assurance Co.,* supra at 183.

■ 2. *Legal Analysis.* Notwithstanding the Defendants' flat pronouncement, that "federal law creates the [plaintiffs'] cause of action, or * * * plaintiffs' Complaint establishes that their right to relief 'necessarily depends on a resolution of a substantial question of federal law,'" our thorough review of the Plaintiffs' Complaint has failed to corroborate either alternative. Indeed, we find no evidence, and the Defendants do not seriously assert, that the Plaintiffs' State law claims have been preempted by RESPA, for the Act makes unmistakably clear that jurisdiction over RESPA claims is concurrently shared by the State and Federal Courts. See, *Title 12 U.S.C. § 2614.* In fact, when Congress has intended to preempt State law, in the context of RESPA, it has expressly and lucidly made its intent known. See, *Title 12 U.S.C. § 2605(h).* Insofar as the Plaintiffs' State law claims are concerned, no such preemption has been enunciated by Congress.

Nor is there any merit to the Defendants' gloss, that the Plaintiffs' claims are premised upon Federal law. One can search the Plaintiffs' Complaint in vain, without the least suggestion that the laws, treaties or Constitution of the United States is implicated, in any direct way, in the prosecution of the Plaintiffs' pleaded causes of action. Irrespective of whether those claims properly state a viable cause under the laws of Minnesota, the Defendants have not drawn our attention to any direct or inferential showing that a Federal claim is being asserted.

Next, we are mindful of the Defendants' argument that the written agreements between the parties had incorporated a choice of laws provision which selected "federal law and the law of the jurisdiction in which the Property was located," as governing the construction of the mortgage loan agreement. See, *Exhibit B to Affidavit of John Cleary* at page 3. Of course, without more, the poten-

tial application of this law will not, ineluctably, transform the precepts of Federal law into a "necessary element of * * * the well-pleaded state claims," for "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986). "To set bounds to the pursuit [of a Federal question], the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible." *Gully v. First National Bank,* 299 U.S. 109, 115, 57 S.Ct. 96, 98–99, 81 L.Ed. 70 (1936). In this instance, the potential Federal claims are sufficiently unimposing that the Plaintiff has elected not to pursue them if, in fact, any such Federal claim exists.

■ Although not cited by any of the parties, our research has disclosed that, in *Commonwealth Land Title Ins. Co. v. Berks Title Ins. Co.,* 508 F.Supp. 921 (E.D.Pa.1981), the Court was confronted with an issue which closely parallels that which is presented here. There, the defendants removed the plaintiff's claim from the state courts, even though the plaintiff admitted that it was not asserting any action under the RESPA. The Court concluded that, no other indicia of Federal jurisdiction having appeared in the plaintiff's Complaint, the case should be remanded to the State Courts. In the words of the Court:

> By discerning a federal cause of action where plaintiff has denied one, defendant cannot create federal jurisdiction.

*Id.* at 922, citing *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969).

We are persuaded, as the Court was in *Kramer,* that it would be manifestly unfair to contrive a Federal claim, where the Plaintiffs have denied its existence, or to require the Plaintiffs to prove a claim which they never have made, and which they admit that they could not prove—merely so that we can consider the Defendants' Motion to summarily dispose of the claim.

If, as the Defendants suggest, the Plaintiffs' claims have no prospect of success under the laws of the State of Minnesota, then the State Court can dismiss those claims upon remand, but we find no proper occasion to convert quintessentially State law claims into a Federal analog merely to allow the Defendants to substantively challenge a claim that the Plaintiffs have not alleged. As a consequence, we conclude that, upon a fair reading of the Plaintiffs' well-pleaded Complaint, Federal law does not create the Plaintiffs' plainly pleaded causes, nor does the Plaintiffs' right to relief necessarily depend upon a resolution of a substantial question of Federal law. Finding no basis for the exercise of Federal Question jurisdiction, we turn to the Defendants' Diversity of Citizenship jurisdictional arguments.

### B. *Diversity of Citizenship Jurisdiction.*

1. *Standard of Review.* Where, as here, all concede that complete diversity exists between the parties, our analysis necessarily focuses on whether the Plaintiffs' Complaint has satisfied the requisite threshold, for the amount in controversy, of $50,000.00. See, e.g., *Bergstrom v. Burlington Northern R. Co.*, 895 F.Supp. 257, 258 (D.N.D.1995); *Visintine v. Saab Automobile A.B.*, 891 F.Supp. 496, 497 (E.D.Mo.1995).

Under clearly-established Supreme Court precedent, in a class action setting, each Plaintiff must satisfy the amount in controversy threshold, as no aggregation of claimed damages, among the parties-Plaintiff, is permissible. See, *Zahn v. International Paper Co.*, 414 U.S. 291, 300, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 336, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). "An exception to the non-aggregation rule has been recognized where the class members have 'a common and undivided interest' in the claim." *Gilman v. Wheat, First Securities, Inc.*, 896 F.Supp. 507, 509 n. 4 (D.Md.1995). The governing rule, for determining whether class members' claims are subject to aggregation, was stated in *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911), as follows:

When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

Here, the Defendants contend that Plaintiffs' request for an equitable remedy comprises a common and undivided interest in a form of relief which allows aggregation for purposes of satisfying the amount in controversy. According to the Affidavit evidence, that has been submitted by the Defendants and that has not been rebutted, any effort to satisfy the Plaintiffs' request for injunctive relief will require an expenditure in excess of $50,000.00.

Accordingly, the Defendants assure us that the amount in controversy requirements of Title 28 U.S.C. § 1332 is satisfied by the aggregated cost to the Defendants of complying with the Plaintiffs' request for injunctive relief. The Plaintiffs disagree, and urge that we adopt the prevailing rule that, for purposes of injunctive relief in the milieu of a putative class action, the costs to the Defendants, in satisfying the request for equitable relief, should not be aggregated in order to satisfy the requisite amount in controversy.

2. *Legal Analysis.* An extended discussion of the conflicting contentions is unnecessary in light of the general rule, which does not appear to admit of compelling exception, that the costs to a defendant, in complying with any injunctive Order, may not be aggregated, in a class action proceeding, so as to satisfy the amount in controversy prerequisite of Section 1332. See, *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1050 (3rd Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789–90 (9th Cir.1977); *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597, 599 (10th Cir.1970); *Gilman v. Wheat, First Securities, Inc.*, supra at 512; *Hall v. ITT Financial Services*, 891 F.Supp. 580, 583 (M.D.Ala.1994); *Visintine v. Saab Auto. A.B.*, supra at 499; *Smiley v. Citibank*

(South Dakota), N.A., 863 F.Supp. 1156, 1164 (C.D.Cal.1993); Copeland v. MBNA America, N.A., 820 F.Supp. 537, 541 (D.Colo.1993); Bassett v. Toyota Motor Credit Corp., 818 F.Supp. 1462, 1467–68 (S.D.Ala.1993); Indianer v. Franklin Life Ins. Co., 113 F.R.D. 595, 604–05 (S.D.Fla.1986); Nat. Organization for Women v. Mutual of Omaha Ins., 612 F.Supp. 100, 107–08 (D.C.D.C.1985); Barton Chemical Corp. v. Avis Rent A Car System, Inc., 402 F.Supp. 1195, 1197–98 (N.D.Ill.1975); but cf., Justice v. Atchison, Topeka and Santa Fe Ry. Co., 927 F.2d 503, 504–05 (10th Cir.1991); Committee for GI Rights v. Callaway, 518 F.2d 466, 473 (D.C.Cir.1975); Martin v. Granite City Steel Corp., 596 F.Supp. 293, 297 (S.D.Ill.1984).[4]

Against this formidable array of contrary authority, the Defendants urge that we carve an exception to the Supreme Court's holdings, in Snyder and Zahn, which would wholly devour any proscription, against the aggregation of a defendant's anticipated costs, so as to permit a defendant's removal of a class action to Federal Court, in a way that would be denied to a plaintiff, under Snyder

and Zahn, who would seek to originate that same class proceeding in a Federal venue.[5] For example, the Defendants contend that each class member has a legal right to claim the full scope of equitable relief that the Plaintiffs have claimed here, and that, therefore, no aggregation is necessary. However, we are not convinced that, absent a class action medium, the Plaintiffs would have any prospect of securing the broad, sweeping equitable relief that they seek. See, e.g., Smiley v. Citibank (South Dakota), N.A., supra at 1164 (rejecting an identical argument).

Similarly, to the extent that the Defendants argue that such an aggregation will allow the Federal Courts to address diversity cases which are significant in terms of their measurable damages, the same public policy would urge the reversal of Snyder and Zahn—a prospect that has not eventuated in the quarter of a century since their espousal of an antiaggregation doctrine. If the Defendants are correct, that the aggregation of their costs should be acceptable in computing the amount in controversy for removal purposes, we doubt that it can be seriously

---

**4.** A length analysis, so as to distinguish the Courts' holdings in Justice v. Atchison, Topeka and Santa Fe Ry. Co., 927 F.2d 503 (10th Cir. 1991), in Committee for GI Rights v. Callaway, 518 F.2d 466 (D.C.Cir.1975), and in Martin v. Granite City Steel Corp., 596 F.Supp. 293 (S.D.Ill.1984), is unnecessary for, as a simple matter of logic, their allowance of an aggregation of the defendants' anticipated costs, in order to permit the removal of a class action to a Federal venue, cannot be intelligibly reconciled with the Supreme Court's repeated disallowance of an aggregation of the plaintiff class members' damages, which would otherwise permit the origination of that same class proceeding in a Federal forum. See, Zahn v. Int'l Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

Suffice it to say here that, unlike the circumstances in Justice, we have no action to abate a continuing nuisance, nor do we have Plaintiffs who possess a common and undivided interest, in a single title or right, that would promote an aggregation of their damages. See, Packard v. Provident Nat. Bank, 994 F.2d 1039, 1050 n. 14 (3rd Cir.1993), citing Zahn v. Int'l Paper Co., supra, 414 U.S. at 294, 94 S.Ct. at 508, and Justice v. Atchison, Topeka and Santa Fe Ry. Co., supra; see also, Smiley v. Citibank (South Dakota), N.A., 863 F.Supp. 1156, 1165 n. 16 (C.D.Cal. 1993) (distinguishing Justice as an individual, and not a class, action). Accordingly, we adhere to what is, unquestionably, the majority view of

those Courts which have examined the issue, and which have rejected the "defendants' viewpoint" in valuing a class action claim for removal purposes.

**5.** The Defendants' reliance upon Bergstrom v. Burlington Northern R. Co., 895 F.Supp. 257 (D.N.D.1995), for the proposition that a defendant may predicate a removal upon the computation of an amount in controversy, which accounts for the cost to that defendant if the plaintiff is successful in securing his requested equitable remedy, is misplaced. Unlike the circumstances before us, Bergstrom did not involve a class action proceeding and, therefore, its holding is inapposite. In so concluding, we do not reach the intriguing issue of whether the holding in Bergstrom is consistent with the prevailing authority in this Circuit. See, Burns v. Massachusetts Mut. Life Ins. Co., 820 F.2d 246, 248 (8th Cir.1987) ("The amount in controversy in a suit for injunctive relief is measured by the value to the plaintiff of the right sought to be enforced."); Massachusetts St. Pharm. Ass'n v. Federal Prescrip. Serv., 431 F.2d 130, 132 n. 1 (8th Cir.1970) ("In light of Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319, * * * holding that only plaintiffs who have a common and undivided interest in a single title or right may aggregate their claims to reach the jurisdictional amount, we are of the view that the 'plaintiff's viewpoint' rule is the only valid rule.").

argued that the same aggregation should be denied to those plaintiff-classes, who would prefer to originate their class-claims in a Federal, rather than a State, forum. Until such time as the holdings in *Snyder* and *Zahn* are reversed, or legislatively overruled, we are bound to obey their command, and we do so here.[6]

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiffs' Motion to Remand this matter, to the Minnesota District Court for Dakota County [Docket Nos. 8, 17 and 20] is GRANTED, and the Clerk is directed to do so forthwith.

2. That the Defendants' Motions to Dismiss or, alternatively, for the entry of Summary Judgment [Docket Nos. 6, 7, 9, 15, 18 and 19], are DENIED as jurisdictionally moot.

---

**6.** Nor do we find a different result counseled by the recent amendments to the Court's supplemental jurisdiction, that were enacted by the Judicial Improvements Act of 1990, and were codified at Title 28 U.S.C. § 1367. Two Circuits have now held that those amendments have overruled the Supreme Court's holding in *Zahn v. Int'l Paper Co.,* supra, and/or *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), by allowing the Federal Courts to extend supplemental—what was formally known as "pendent" jurisdiction—over the claims of class members who have not individually satisfied the amount in controversy threshold. See, *Strom-berg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 930 (7th Cir.1996); *In re Abbott Laboratories,* 51 F.3d 524, 529 (5th Cir.1995). Here, however, we have no showing, to a "legal certainty," that any of the Plaintiffs, or the Defendants, can satisfy the jurisdictional amount in controversy and, therefore, we do not reach the impact, if any, that the modifications to our supplemental jurisdiction may have upon the issues before us. See, e.g., *Gilman v. Wheat, First Securities, Inc.,* 896 F.Supp. 507, 509 n. 4 (D.Md. 1995); *Visintine v. Saab Auto. A.B.,* 891 F.Supp. 496, 499 (E.D.Mo.1995).